UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SANDRA Y., | ) |
|     Plaintiff(s) | ) ) ) |
| vs. | ) ) Case No. 4:24-CV-1531 SRW ) |
| MARTIN O'MALLEY,[1] Commissioner of Social Security Administration, | ) ) ) ) ) |
|     Defendant(s). | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 8. Defendant filed a Brief in Support of the Answer. ECF No. 9. Plaintiff filed a Reply. ECF No. 10. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.      Factual and Procedural Background**

On November 24, 2021, Plaintiff Sandra Y. protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, with an alleged onset date of October

---

[1] At the time this case was filed, Martin O'Malley was the Commissioner of Social Security. Frank Bisignano became the Commissioner of Social Security on May 6, 2025. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Frank Bisignano for Martin J. O'Malley in this matter.

12, 2021. Tr. 13, 67, 184-85. Plaintiff's application was denied upon initial consideration and reconsideration. Tr. 68-83, 91-92, 102-05. On May 13, 2022, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 95.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on December 8, 2022. Tr. 31-66. Plaintiff testified concerning her disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert John Stephen Dolan. *Id*.

On October 11, 2023, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 10-29. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 106-07. On September 23, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

**II.     Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant

evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.   The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2026, and has not engaged in substantial gainful activity since the alleged onset date of October 12, 2021. Tr. 15. Plaintiff has the severe impairments of "degenerative disc disease; osteoarthritis; degenerative joint disease right knee; and obesity." Tr. 15. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 18. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she should avoid climbing ladders, ropes, or scaffolds. The claimant may occasionally climb ramps and stairs, and stoop. She should never kneel, crouch, or crawl. The claimant should avoid concentrated exposure to excessive vibration; avoid all exposure to workplace hazards such as unprotected heights and working in proximity to moving mechanical parts.

Tr. 19.

5

The ALJ found Plaintiff can perform past relevant work as an insurance data entry clerk (*Dictionary of Occupational Titles* ("*DOT*") No. 203.582-054, sedentary) because it does not require the performance of work-related activities precluded by her RFC. Tr. 23. The ALJ further determined that, considering her age (56), education (high school graduate), work experience, transferable skills, and RFC, there are other jobs existing in significant numbers in the national economy that Plaintiff can also perform. Tr. 23-24. Such representative occupations within the sedentary exertional level include sub-assembler, electrical (*DOT* No. 203.582-066, with approximately 5,000 jobs in the national economy)[2]; clerk typist (*DOT* No. 203.362-010, with approximately 10,000 jobs in the national economy); and order clerk (*DOT* No. 249.362-026, with approximately 20,000 jobs in the national economy). Tr. 24.

The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from October 12, 2021, through the date of this decision. Tr. 25.

**IV.**     **Discussion**

Plaintiff presents one assignment of error, arguing the ALJ erred by failing to include her mental limitations in the RFC and did not provide a sufficient analysis to explain why such limitations were excluded. She explicitly states she "does not dispute the physical portion of the ALJs RFC, that she can perform sedentary jobs." ECF No. 8 at 4. Because Plaintiff narrows her arguments to the ALJ's evaluation of her mental impairments and does not contest the evaluation of her physical impairments, the Court will limit its discussion to the ALJ's RFC assessment of Plaintiff's mental impairments only. *See, e.g., Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512,

---

[2] The Court notes the ALJ incorrectly wrote "sub-assembler, electrical" rather than "typist." The "typist" occupation corresponds to *DOT* No. 203.582-066 and is the profession the VE testified about during Plaintiff's hearing. *See* Tr. 61. This clerical error by the ALJ does not affect the Court's analysis as it will disregard the incorrect reference to "sub-assembler, electrical." A mere typographical or clerical error does not warrant reversal. *See Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1199 (E.D. Mo. 2004).

517-18 (6th Cir. 2010) (noting plaintiff's failure to raise specific claims in a social security brief constitutes a waiver of any such unaddressed claims).

At step 2 of the disability analysis, the ALJ determines if a claimant's impairments are severe. An impairment is not severe if it "amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). When determining the severity of a mental impairment, an ALJ evaluates the claimant's limitations in four broad areas of mental functioning, known as "paragraph B" criteria found in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). Findings regarding a claimant's limitations in these four broad areas are used to determine whether the mental impairment meets or equals one of the listed impairments. If a claimant does not have an impairment that meets or equals one of the listed impairments in step three, the ALJ must determine the claimant's RFC, which is defined as the most a claimant can do despite her physical and mental limitations. *Hensley v. Colvin*, 829 F.3d 926, 931 (8th Cir. 2016); *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). An ALJ must consider all of the claimant's relevant, credible impairments in the RFC formulation, including those that were determined to be non-severe. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

In step 2, the ALJ found Plaintiff's depressive disorder and anxiety disorder did "not cause more than minimal limitation in [her] ability to perform basic mental work activities and [were] therefore nonsevere." *Id.* Specifically, the ALJ determined she had mild limitations in the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing herself. Tr. 16-17. *See* 20 C.F.R. § 404.1520a(c)(3).

In finding mild limitations only, the ALJ referred to Plaintiff's Function Report in which she indicated she can do light household chores, prepare simple meals, manage money, pay bills, shop for groceries, and drive a vehicle. Tr. 17, 216-25. Despite feeling anxious around strangers/crowds and acknowledging she gets easily annoyed by people, Plaintiff reported no issues with authority figures, denied ever getting fired from a job due to interpersonal issues, indicated she can cohabitate with her family, and stated she spends time with others in person and on the telephone. Tr. 216, 221, 223-24. She reports attending church weekly, although she often leaves early because her mental health conditions now make it difficult for her to participate in social activities. Tr. 221. She blames her pain and physical impairments for her issues with concentration, focus, and self-care. Tr. 216-17. In addition to the Function Report, the ALJ found the record supported her ability to manage her healthcare without assistance, maintain a cooperative and pleasant relationship with her providers, and appear to appointments with proper hygiene. Tr. 16-17. *See* Tr. 405 ("normal mood and affect and active and alert," "recent memory normal and remote memory normal"), 429 ("Calm and cooperative. Mood appropriate."), 486 ("appropriately groomed"), 487 ("cooperative throughout").

The ALJ then cited to a Psychological Evaluation, dated July 11, 2022, which was scheduled upon a referral from the Missouri Social Security Disability Determinations Unit. Tr. 17, 486-90. The ALJ found the Psychological Evaluation to be persuasive in determining that Plaintiff's mental impairment of "Adjustment Disorder with mixed anxiety and depressed mode" was non-severe. Tr. 17. In reviewing the background of Plaintiff's impairments, licensed psychologist, Alison Burner, M.A., noted her psychiatric history was negative for hospitalizations with no mental health intervention. Tr. 487. Ms. Bruner indicated that Plaintiff relayed mild symptoms. Tr. 487-88. Upon a mental status examination, Plaintiff was described

8

as cooperative with normal affect and eye contact; exhibited no psychomotor agitation; had clear speech and normal social language functioning; was properly oriented to person, place and time; displayed an average immediate memory and adequate recent and past memory; had no issues with basic mathematics, recalling information, mental control, or abstract thinking; and showed average insight and judgment as well as rational and organized thought content with adequate attention and concentration. Tr. 487-88. Plaintiff was negative for perceptual disturbance, visual hallucinations, auditory disturbance, paranoia, mania, or psychotic disorders. Tr. 488.

Ms. Bruner opined that Plaintiff did not have any impairments in her ability to understand, remember, or apply information because she was able to understand, comprehend, and recall simple instructions; did not have any impairments in her ability to concentrate, persist, and maintain pace because her concentration and persistence were within normal limits during the examination and her persistence and pace were not affected by psychological issues; and did not have any impairments in her ability to adapt and manage herself because her adaptive skills were not affected by psychological issues, and she would be able to regulate her behavior in a work setting. Tr. 489. However, Ms. Bruner did find Plaintiff would have a mild impairment in her ability to interact with others despite her good social skills because she reported a loss of interest in interacting with others, a preference to be with her family, and a fear to visit places alone due to her back issues. *Id.*

The ALJ also found the prior administrative findings offered by State Agent Psychologist, Kim Stalker, Psy.D., on July 12, 2022, to be persuasive. Tr. 18. Upon a review of Plaintiff's medical record then available, Dr. Stalker opined that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. Tr. 77-78. In making this

9

determination, Dr. Stalker indicated that her activities of daily living supported "limitations related primarily to physical impairments, rather than psychological," her psychiatric history was negative for hospitalizations, and she had no current or past mental health interventions. Tr. 78.

The ALJ observed that Dr. Stalker's opinion was not only consistent and supported by her analysis, but also consistent and supported by the absence of significant objective abnormalities on the Plaintiff's mental status examinations, a lack of mental health complaints to her providers, and treatment notes indicating depression scores of zero or negative. Tr. 18. *See* Tr. 413 ("depression score: 0"), Tr. 415 ("depression screening: negative").

Plaintiff argues that the ALJ committed reversible error by failing to include her mental impairments in the RFC determination or, alternatively, by failing to explain why he did not include the limitations. ECF No. 8 at 7. Responding, the Commissioner points to the ALJ's determination in which he specifically indicated he considered her mental function within the RFC. *See* ECF No. 9 at 5-6 (quoting Tr. 18). The Commissioner argues that substantial evidence, including the medical opinion from the July 11, 2022 Psychological Evaluation by Alison Burner, M.A., and the July 12, 2002 administrative finding by Kim Stalker, Psy.D., support the ALJ's finding that Plaintiff's mental limitations were non-severe. *Id.* at 6-9. Further, the Commissioner contends that the ALJ was not required to include any non-severe mental impairments in the RFC because the ALJ found that Plaintiff's non-severe mental impairments, which he classified as mild, imposed no significant limitations on her ability to work.

The ALJ's finding at step 2 that Plaintiff's depression and anxiety are non-severe is supported by substantial evidence. Plaintiff testified she has not sought any treatment for depression or anxiety, *see* Tr. 54-55, and the record is devoid of any mental health treatment,

10

hospitalizations, or complaints to her provider about depression or anxiety. At most, the medical records reflect that her mental impairments were mild. Tr. 77, 487-89.

As to Plaintiff's argument that the ALJ committed error by not incorporating the mild mental limitations in the RFC, this Court has already rejected such a requirement:

> The ALJ's RFC finding at step 4 is also supported by substantial evidence even though, as Plaintiff contends, the ALJ failed to include any of the "mild" mental limitations found at step 2. *Kelly T. v. Kijakazi*, No. 20-CV-1915 (WMW/DTS), 2022 WL 507609, at *4 (D. Minn. Jan. 26, 2022), is instructive. In *Kelly*, the ALJ found, at step 2, that the plaintiff's depression and anxiety caused mild limitations in her ability to perform basic mental work activities. *Id.* In determining the plaintiff's RFC, the ALJ in *Kelly* found opinion evidence of agency doctors persuasive that the plaintiff's depression and anxiety did not impose any significant limitations and, ultimately, did not include mental limitations in the RFC. *Id.* The *Kelly* court affirmed the ALJ's decision holding that "[t]he fact that the ALJ concluded for purposes of step two that [the plaintiff]'s mental impairments were [']mild['] and not [']none['] does not mean that an RFC *must* include mental functioning limitations." *Id.* (emphasis in original). "Rather, when mental impairments are not severe, they still must be evaluated for purposes of steps four and five and the ALJ must make an assessment of [a c]laimant's mental impairment in the context of determining an appropriate RFC." *Id.* The *Kelly* court concluded that "[t]he ALJ's findings in step two can be harmonized with the ALJ's analysis in step four as the ALJ found mild limitations in step two and considered those limitations in step four, ultimately determining [the c]laimant retained the ability to perform work within the parameters of the RFC." *Id.*
>
> As in *Kelly,* the ALJ's step 2 findings in this case can be harmonized with the RFC even though the RFC did not include mental limitations. Like the ALJ in *Kelly*, the ALJ in this case considered Plaintiff's mental impairments in determining an appropriate RFC. However, the ALJ found Dr. Brandhorst's assessment that Plaintiff had no "paragraph B" criteria limitations persuasive. The ALJ also found that Dr. Brandhort's opinion was consistent with the fully developed record available at the time of the hearing, including evidence that Plaintiff had started taking medication for his mental health. In sum, because the ALJ considered Plaintiff's mild mental health limitations in determining the RFC and because the record as a whole supports the RFC, the ALJ did not err in omitting mild mental limitations from the RFC. *See Kelly*, 2022 WL 507609, at *4.

*Lindell v. Kijakazi*, 2022 WL 823053, at *5 (E.D. Mo. Mar. 18, 2022) (internal citations to the transcript omitted). *See also Coons v. O'Malley*, 2024 WL 3694130, at *6 (E.D. Mo. Aug. 7,

2024) ("Even when an ALJ's analysis of paragraph B criteria finds that a claimant has mental limitations, these limitations need not necessarily appear in the subsequent RFC[.]").

The Court now turns to Plaintiff's alternative argument that the ALJ committed reversible error because he failed to explain why he did not include mental limitations in Plaintiff's RFC. On September 24, 2024, this Court decided *Griffith v. O'Malley*, which remanded on the same issue as presented here for the reason that: "a step two determination of 'non-severe' is not necessarily the end of [the ALJ's] inquiry. Instead, when crafting the RFC, the ALJ must also consider the combined effect of all of the claimant's impairments, without regard to whether any one impairment would be sufficiently severe to be disabling if considered separately." 2024 WL 4274855, at *4 (E.D. Mo. Sep. 24, 2024).

On September 30, 2024, this Court decided *Hammer v. O'Malley*, which affirmed the Commissioner, stating: "the Court has found no case where the Eighth Circuit Court of Appeals reversed because the ALJ failed to explain explicitly why he or she did not include in the RFC mild mental limitations that were found in step two." 2024 WL 4345755, at *5 (E.D. Mo. Sep. 30, 2024). Rather, the question is whether "the ALJ's findings in step two and her RFC determination in step four can be harmonized." *Id. Hammer* ultimately found that the two steps were harmonized because the ALJ did partially discuss her mental impairments in the RFC section. *Id.*

In *Miller v. O'Malley*, decided on October 4, 2024, the Court explained: "[t]he fact that the ALJ concluded for purposes of Step 2 that plaintiff's mental impairments were 'mild' does not mean that the RFC must include mental functioning limitations. Rather, it simply requires the ALJ to assess these non-severe mental impairments in the context of determining an appropriate RFC. Here, the ALJ's findings in Step 2 can be harmonized with the ALJ's analysis in Step 4 as

12

the ALJ found mild limitations in Step 2 and went on to consider those limitations in Step 4, ultimately concluding that plaintiff retained the ability to perform work within the parameters of the RFC." *Miller v. O'Malley*, 2024 WL 4416821, at *5 (E.D. Mo. Oct. 4, 2024) (citations and emphasis omitted).

Similarly, the Western District of Missouri has held, "'the mild mental limitations found by the ALJ should have been incorporated into the RFC determination *or a reason provided for their omission*, and on remand, the ALJ should either incorporate these limitations into the RFC *or provide justification for their omission*." *Berutti v. Saul*, 2021 WL 1499313, at *2 (W.D. Mo. Apr. 16, 2021) (emphasis added) (quoting *Vicky R. v. Saul*, 2021 WL 536297, at *14 (D. Minn. Jan. 28, 2021)) (citing *Clevenger v. Colvin*, 2016 WL 3911982, at *2 (W.D. Mo. July 15, 2016) (reversing where the ALJ failed to include his own findings on social limitations in the RFC determination and did not explain why the findings were omitted)). "Simply because a limitation proves mild does not render obsolete the requirement that the ALJ explain why . . . an otherwise persuasive medical opinion failed to impact the RFC." *Nebgen v. Kijakazi*, No. 2024 WL 1328184, at *2 (W.D. Mo. Mar. 28, 2024). *See also Martinette v. Acting Comm'r, Soc. Sec. Admin.*, 2019 WL 2914098, at *2 (W.D. Mo. July 8, 2019) (if mild mental limitations are not incorporated into the RFC determination, a reason must be provided for their omission).

In the instant case, the Court finds that the ALJ's analysis in step 2 cannot be harmonized with the subsequent RFC assessment because the ALJ is completely silent as to how Plaintiff's mild mental limitations would, if at all, affect her residual functional capacity to maintain full-time employment either in her past occupation or in the listed representative occupations. *Compare to Lindell v. Kijakazi*, 2022 WL 823053, at *5 ("the ALJ's step 2 findings in this case can be harmonized with the RFC even though the RFC did not include mental limitations"

13

because "the ALJ in this case considered Plaintiff's mental impairments in determining an appropriate RFC.").

Here, the ALJ acknowledged in step 2 that Plaintiff had anxiety with strangers and crowds, tended to get easily annoyed by people, often had to leave church functions because of her difficulties with social situations, experienced problems with concentration (albeit due to her physical pain), and had difficulties handling changes in routine. Tr. 16-17. Despite finding that she had mild mental limitations, there is nothing within the RFC analysis that explicitly discusses whether these issues would affect her ability to perform work in the data entry, typist, clerk typist, or order clerk occupations. *See Spencer v. O'Malley*, 2024 WL 551637, at *5 (E.D. Mo. Feb. 12, 2024) ("It is the duty of the ALJ to assess the RFC and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner.").

The ALJ's step 2 assessment states "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." Tr. 18 However, nothing in the step 4 RFC assessment shows that the ALJ actually perform this "more detailed assessment" of her nonsevere mental limitations.

Upon remand, the ALJ may well determine that Plaintiff is not disabled. The Court is also aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of

benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ's duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Frank Bisignano for Martin J. O'Malley in the court record of this case.

So Ordered this 3rd day of June, 2025.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE